FILED

Apr 09 2021
4:08 pm

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ soniad        DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

November 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LONG NGOC TRAN, (1),<br>  aka "Long Tu,"<br>TUNG THANH NGUYEN (2),<br>  aka "Ang,"<br>THANH LAN THI NGUYEN (3),<br>  aka "Lan,"<br>DENNIS MICHAEL DIBLASI (4),<br>  aka "Drago,"<br>WAYNE JONATHAN CLAYTON Jr. (5),<br>  aka "G-Wayne,"<br>YVONNE MICHELLE AGUILAR (6),<br>  aka "Michelle,"<br>ROBERT JAMES WRIGHT (7),<br>TAM ONH ONG (8),<br>  aka "Fireball,"<br>SAENGAMPHAY M. PHOMMASANE (9),<br>  aka "Melinda,"<br>KAREN RENE ANN<br>    PRANGSAMPHAN-PORTER (10),<br>  aka "KK,"<br>JESSICA CASTILLO (11),<br>  aka "Green Eyes,"<br><br>Defendants. | Case No. __'21 CR1109 H__<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 371 –<br>Conspiracy; Title 18, U.S.C.,<br>Sec. 1955 – Illegal Gambling<br>Business; Title 21, U.S.C.,<br>Sec. 856(a)(1) – Maintaining a<br>Drug-Involved Premises; Title 21,<br>U.S.C., Sec. 841(a)(1) –<br>Possession of Methamphetamine<br>with Intent Distribute; Title 18,<br>U.S.C., Sec. 2 – Aiding and<br>Abetting; Title 18, U.S.C.,<br>Secs. 981(a)(1)(C), and 1955(d),<br>Title 21, U.S.C., Sec, 853, and<br>Title 28, U.S.C., Sec. 2461(c) –<br>Criminal Forfeiture |

ADBL:nlv:San Diego
4/9/21

The grand jury charges:

## Count 1

CONSPIRACY

[18 U.S.C. § 371]

1.    Beginning at a date unknown to the grand jury and continuing up to on or about the date of this Indictment, within the Southern District of California, and elsewhere, defendants LONG NGOC TRAN, aka "Long Tu", TUNG THANH NGUYEN, aka "Ang", THANH LAN NGUYEN, aka "Lan", DENNIS MICHAEL DIBLASI, aka "Drago",  WAYNE JONATHAN CLAYTON JR., aka "G-Wayne", YVONNE MICHELLE AGUILAR, aka "Michelle", and ROBERT JAMES WRIGHT, (collectively hereinafter "Defendants"), and others known and unknown to the grand jury, did knowingly and intentionally conspire to commit offenses against the United States as set forth below:

a.    Operating an Illegal Gambling Business, in violation of Title 18, United States Code, Section 1955, and,

b.    Maintaining a Drug-Involved Premises, in violation of Title 21, United States Code, Sections 856(a)(1) and Title 18, United States Code, Section 2.

MANNER AND MEANS OF CONSPIRACY

2.    In furtherance of this conspiracy and to effect the objects thereof, Defendants and other co-conspirators utilized the following manner and means, among others:

a.    It was a part of the conspiracy that the Defendants and other co-conspirators engaged in the business of operating illegal gambling establishments in violation of California Penal Code, Sections 330a and 330.1.

b.    It was a further part of the conspiracy that Defendants and other co-conspirators engaged in business of operating illegal

2

1  gambling establishments and maintaining drug involved premises by
2  equipping the illegal gambling establishments with electronic gambling
3  machines which were programmed with several games of chance such as
4  poker, blackjack, keno, jacks or better, and slot games.

5  c.  It was a further part of the conspiracy that Defendants
6  and other co-conspirators engaged in the business of operating illegal
7  gambling establishments and maintaining drug involved premises by
8  operating the gambling establishments 24 hours a day, seven days a week,
9  with some shutting down in the early morning hours and starting up again
10  in the afternoons.

11  d.  It was a further part of the conspiracy that Defendants
12  and other co-conspirators engaged in the business of operating illegal
13  gambling establishments and maintaining drug involved premises by
14  outfitting the illegal gambling establishments with exterior and
15  interior video surveillance cameras, which were often monitored remotely
16  by the establishment owners and managers. Those locations equipped with
17  surveillance equipment often contained monitors showing live feed of the
18  video surveillance.

19  e.  It was a further part of the conspiracy that Defendants
20  and other co-conspirators engaged in the business of operating illegal
21  gambling establishments and maintaining drug involved premises by
22  conducting audits of the gambling machines, which often took in more
23  than $3000 per day. Such audits were often carried out several times in
24  a twenty-four hour period when the bank roll reached a specified amount,
25  such as $2,000. This was done to reduce potential losses to the business
26  from robbery and law enforcement seizures.  The employees kept the
27  patrons at a distance or directed them to step outside during the audits
28  to reduce the risk of patrons robbing the business.  The audits were

1 conducted by trusted employees who used a key to unlock and open the
2 gambling machines, retrieved the money from inside of the machines,
3 photographed the master audit screen of each machine showing the cash
4 in, cash out (winnings), and net gain/profit per machine, and clearing
5 the screen after each audit. Employees provided the master audit screen
6 photographs to the owners/managers. The employees would also document
7 the cash in, cash out, net gain, loans to customers, and other
8 information in paper ledgers.

9        f.   It was further part of the conspiracy that Defendants and
10 other co-conspirators engaged in the business of operating illegal
11 gambling establishments and maintaining drug involved premises by taking
12 actions to conceal the identity of the true owners of the gambling
13 establishments. In order to conceal their identities, the owners would
14 frequently avoid physically entering their own establishments, but
15 instead relied on trusted associates to open, operate and maintain the
16 illegal gambling establishments, and to rent property and obtain
17 utilities for these establishments, to reduce the likelihood that the
18 true owners would be identified by law enforcement.

19        g.   It was further part of the conspiracy that Defendants and
20 other co-conspirators engaged in the business of operating illegal
21 gambling establishments and maintaining drug involved premises by
22 employing individuals in specific roles to operate the illegal gambling
23 establishments. The roles included:

24        h.   A doorman who acted as an enforcer to handle disturbances
25 within the illegal gambling establishment, screened patrons for entry
26 into the illegal gambling establishment, monitored the video
27 surveillance equipment, and reacted to law enforcement presence.

28

1    i.    A "banker" who carried the "bank roll," meaning the money
2  to provide change and winnings to customers. One or two bankers worked
3  inside each establishment at any given time.

4    j.    A money courier who brought additional cash to employees
5  working inside the establishments, collected money from the regular
6  audits, and transported profits to the owners. The money courier also
7  acted as a manager who directed employees' actions and made decisions
8  on behalf of the owners at these locations.

9    k.    It was a further part of the conspiracy that Defendants
10  and other co-conspirators communicated by electronic means, such as
11  cellular telephones and messaging applications, and discussed the
12  operation of illegal gambling establishments.

13    l.    It was further part of the conspiracy that Defendants and
14  other co-conspirators engaged in the business of operating illegal
15  gambling establishments and maintaining drug involved premises by
16  allowing patrons to possess and use controlled substances, typically
17  methamphetamine, while gambling. The ability to consume controlled
18  substances while gambling enticed the patrons to frequent the illegal
19  gambling establishments.

20    m.    It was further part of the conspiracy that Defendants and
21  other co-conspirators engaged in the business of operating illegal
22  gambling establishments and maintaining drug involved premises by
23  allowing the distribution of controlled substances inside the illegal
24  gambling establishments patrons were enticed to frequent the illegal
25  gambling establishment.

26    n.    It was further part of the conspiracy that from at least
27  as early as December 2019 until September 10, 2020, and continuing from
28  on or about January 2021 until the date of this indictment, defendant

1  LONG NGOC TRAN, aka "Long Tu", operated an illegal gambling establishment
2  at 4079 Oakcrest Drive, San Diego, California, a four-bedroom, two-story
3  residence, with numerous electronic gambling machines ("Gaming Den #1").

4       o.   It was further part of the conspiracy that from at least
5  as early as December 2019 until October 15, 2020, defendant LONG NGOC
6  TRAN, aka "Long Tu", operated an illegal gambling establishment at 4776
7  El Cajon Boulevard #102, San Diego, California, a suite inside a business
8  complex, with 16 electronic gambling machines ("Gaming Den #2").

9       p.   It was further part of the conspiracy that from on or
10 about March 2020 until June 18, 2020, defendant LONG NGOC TRAN, aka
11 "Long Tu", operated an illegal gambling establishment at 3660 47th
12 Street, San Diego, California, with 14 electronic gambling machines
13 ("Gaming Den #3").

14      q.   It was further part of the conspiracy that from on or
15 about July, 2018 until August 30, 2018, defendant LONG NGOC TRAN, aka
16 "Long Tu", operated an illegal gambling establishment at 4284 Menlo
17 Avenue, San Diego, California, with 16 electronic gambling machines
18 ("Gaming Den #4").

19      r.   It was further part of the conspiracy that from on or
20 about October, 2018 until March 21, 2019, 2019, defendant LONG NGOC
21 TRAN, aka "Long Tu", operated an illegal gambling establishment at 3817
22 El Cajon Boulevard, San Diego, California, with 8 electronic gambling
23 machines ("Gaming Den #5").

24      s.   It was further part of the conspiracy that from on or
25 about September, 2018 until October 31, 2018, defendant LONG NGOC TRAN,
26 aka "Long Tu", operated an illegal gambling establishment at 3572 47th
27 Street, San Diego, California, with 7 electronic gambling machines
28 ("Gaming Den #6").

1        t.    It was further part of the conspiracy that from on or
2 about September, 2018 until November 1, 2018, defendant LONG NGOC TRAN,
3 aka "Long Tu", operated an illegal gambling establishment at 4166 48th
4 Street, San Diego, California, with 5 electronic gambling machines
5 ("Gaming Den #7").

6        u.    It was further part of the conspiracy that from on or
7 about October, 2018 until January 9, 2019, defendant LONG NGOC TRAN, aka
8 "Long Tu", operated an illegal gambling establishment at 4834 University
9 Avenue, San Diego, California, with 18 electronic gambling machines
10 ("Gaming Den #8").

11        v.    It was further part of the conspiracy that from on or
12 about January, 2019 until February 7, 2019, defendant LONG NGOG TRAN,
13 aka "Long Tu", operated an illegal gambling establishment at 3656 1/2
14 43rd Street, San Diego, California ("Gaming Den #9").

15                       OVERT ACTS

16    3.    In furtherance of this conspiracy and to effect the objects
17 thereof, the following overt acts, among others, were committed within
18 the Southern District of California, and elsewhere:

19        a.    On August 30, 2018, defendant LONG NGOC TRAN, aka "Long
20 Tu", sent a text message to Ke Van Tran, aka "Kevin," stating in relation
21 to Gaming Den #4, "This samir people who don't work here shouldn't be
22 in the office the last three days…my phone my clothes my boxers my socks
23 three different speakers…came up missing…im ready to fight every single
24 male who's been in that office…one by one…can u tell these mutha fuckas
25 stay the fuck out the office please."

26        b.    On October 13, 2018, Rodrigo Vega sold methamphetamine
27 to a cooperating individual inside Gaming Den #7 while patrons were
28 consuming methamphetamine and gambling on electronic gambling machines.

1    c.    On   October   21,   2018,   Annette   Soyinthisane   sold
2  methamphetamine to a cooperating individual inside Gaming Den #6, while
3  patrons  were  consuming  methamphetamine  and  gambling  on  electronic
4  gambling machines.

5    d.    On December 21, 2018, Derris Braison sold methamphetamine
6  to a cooperating individual inside Gaming Den #8, while patrons were
7  consuming methamphetamine and gambling on electronic gambling machines.

8    e.    On March 5, 2019, Derris Braison sold methamphetamine
9  to a cooperating individual inside Gaming Den #5, while patrons were
10  consuming methamphetamine and gambling on electronic gambling machines.

11    f.    On March 20, 2019, defendant LONG NGOC TRAN, aka "Long
12  Tu", sent a text message to Ke Van Tran directing him to provide $200
13  to a patron at Gaming Den #5.

14    g.    On January 7, 2020, defendant THANH LAN NGUYEN, aka
15  "Lan", paid out patrons gambling winnings and delivered bankroll money
16  to Long Nguyen to pay out gambling winnings at Gaming Den #1.

17    h.    On January 7, 2020, defendant TAM ONG, aka "Fireball",
18  sold methamphetamine to a cooperating individual inside Gaming Den #1.

19    i.    On  January  7,  2020,  defendant  DENNIS  DIBLASI,  aka
20  "Drago", acted as security and provided change to patrons at Gaming Den
21  #1 and facilitated defendant TAM ONG's distribution of methamphetamine
22  to a cooperating individual.

23    j.    On January 24, 2020, defendant WAYNE JONATHAN CLAYTON
24  JR., aka "G-Wayne", opened the door for patrons, held the bankroll, and
25  opened the gambling machines for the purpose of maintaining the gambling
26  machines at Gaming Den #1.

27

28

1         k.   On January 24, 2020, defendants KAREN PORTER, aka "KK",

2   and JESSICA CASTILLO, aka "Green Eyes", sold methamphetamine to a

3   cooperating individual inside Gaming Den #1.

4         l.   On January 30, 2020, Derek Jacobs facilitated entry by

5   acting as the doorman at Gaming Den #1.

6         m.   On February 18, 2020, defendant WAYNE CLAYTON, aka "G-

7   Wayne", conducted an audit on the gambling machines with defendant TUNG

8   THANH NGUYEN, aka "Ang", and Long Nguyen at Gaming Den #1.

9         n.   On February 28, 2020, Derek Jacobs facilitated entry by

10  acting as the doorman at Gaming Den #1 and loaded machines following a

11  robbery at Gaming Den #1.

12        o.   On April 29, 2020, defendant YVONNE AGUILAR, aka

13  "Michelle", paid out gambling winnings to patrons at Gaming Den #3.

14        p.   On May 7, 2020, defendant YVONNE AGUILAR, aka "Michelle",

15  paid out gambling winnings to patrons at Gaming Den #3.

16        q.   On May 7, 2020, defendant SAENGAMPHAY PHOMMASANE, aka

17  "Melinda", paid out gambling winnings to patrons, and removed money from

18  the gambling machines at Gaming Den #3.

19        r.   On May 7, 2020, defendant SAENGAMPHAY PHOMMASANE, aka

20  "Melinda", contacted defendant TAM ONG, aka "Fireball", to facilitate

21  the sale of methamphetamine to a cooperating individual at Gaming Den

22  #3.   On May 7, 2020, defendant TAM ONG, aka "Fireball", sold

23  methamphetamine to a cooperating individual inside Gaming Den #3.

24        s.   On May 22, 2020, defendant YVONNE AGUILAR, aka

25  "Michelle", paid out gambling winnings to patrons at Gaming Den #3.

26        t.   On May 22, 2020, and June 11, 2020, defendant ROBERT

27  WRIGHT worked as a doorman who screened patrons before allowing them to

28  enter Gaming Den #3.

1          u.    On May 26, 2020, defendant YVONNE AGUILAR, aka
2    "Michelle", paid out gambling winnings to patrons at Gaming Den #3.

3          v.    On May 26, 2020, Steve Cerda sold methamphetamine to a
4    cooperating individual inside Gaming Den #3.

5          w.    On June 11, 2020, defendant ROBERT WRIGHT worked as a
6    doorman who screened patrons before allowing them to enter Gaming Den #3.

7          x.    On June 11, 2020, Michael Savage sold methamphetamine to
8    a cooperating individual inside Gaming Den #3.

9          y.    On June 19, 2020, defendant LONG NGOC TRAN, aka "Long
10   Tu", told a cooperating individual that he owned the gambling
11   establishments at Gaming Den #1 and Gaming Den #2.

12         z.    On June 6, 2020, Phoungene Inthichack, aka "NaNa,"
13   communicated with defendant LONG NGOC TRAN, aka "Long Tu", using Facebook
14   Messenger messages.   During this communication, Phoungene Inthichack,
15   aka "NaNa, requested the return of gambling losses incurred at Gaming
16   Den #2.   Defendant LONG NGOC TRAN, aka "Long Tu", stated, "Ok I tell
17   nathan to give you some money back but lan might stop it ok. Tell her
18   that you lost like a thousand.   Because there is no percent back at
19   coffee shop and lan is tripping."

20         aa.   On September 4, 2020, Phonetip Inthavong stated he was
21   an employee of Gaming Den #2.

22         bb.   On January 21, 2021, defendant THANH LAN NGUYEN, aka
23   "Lan", screened an undercover law enforcement officer and directed him
24   to lower his COVID facemask prior to allowing him to enter Gaming Den #2.
25   All in violation of Title 18, United States Code, Section 371.
26   //
27   //
28   //

1

Count 2

2

ILLEGAL GAMBLING BUSINESS

3

[18 U.S.C. § 1955]

4       4.   The allegations set forth in paragraphs 2 and 3 are realleged

5   and incorporated by reference as if fully set forth herein.

6       5.   Beginning on a date unknown to the grand jury and continuing

7   up to on or about the date of this indictment, within the Southern

8   District of California and elsewhere, defendants LONG NGOC TRAN, aka

9   "Long Tu", TUNG THANH NGUYEN, aka "Ang", THANH LAN THI NGUYEN, aka "Lan",

10  DENNIS MICHAEL DIBLASI, aka "Drago", WAYNE JONATHAN CLAYTON JR., aka "G-

11  Wayne", YVONNE MICHELLE AGUILAR, aka "Michelle", ROBERT JAMES WRIGHT,

12  and others, knowingly and intentionally conducted, financed, managed,

13  supervised, directed, and owned all and part of an illegal gambling

14  business involving the operation of electronic gambling machines, which

15  gambling business was a violation of the law of the State of California

16  in which it was conducted (that is, in violation of California Penal

17  Code, Sections 330a and 330.1) and which involved at least five persons

18  who conducted, financed, managed, supervised, directed, and owned all

19  and part of the illegal gambling business, and which remained in

20  substantially continuous operation for a period in excess of thirty days

21  and had a gross revenue of at least $2,000 in any single day; in violation

22  of Title 18, United States Code, Section 1955 and Title 18, United States

23  Code, Section 2.

24  //

25  //

26  //

27  //

28  //

Count 3

MAINTAINING A DRUG INVOLVED PREMISES

[21 U.S.C. § 856(a)(1)]

6.    The allegations set forth in paragraphs 2 and 3 are realleged and incorporated by reference as if fully set forth herein.

7.    Beginning on a date unknown to the grand jury, but at least as early as December 2019, and continuing up to on or about September 10, 2020, within the Southern District of California, defendants LONG NGOC TRAN, aka "Long Tu", TUNG THANH NGUYEN, aka "Ang", THANH LAN THI NGUYEN, aka "Lan", DENNIS MICHAEL DIBLASI, aka "Drago", and WAYNE JONATHAN CLAYTON JR., aka "G-Wayne", and others known and unknown to the grand jury knowingly opened, leased, rented, used and maintained any place, permanently and temporarily, namely: 4079 Oakcrest Drive, San Diego, California;  for the purpose of manufacturing, distributing, and using controlled substances; all in violation of Title 21, United States Code, Section 856(a)(2) and Title 18, United States Code, Section 2.

Count 4

MAINTAINING A DRUG INVOLVED PREMISES

[21 U.S.C. § 856(a)(1)]

8.    The allegations set forth in paragraphs 2 and 3 are realleged and incorporated by reference as if fully set forth herein.

9.    Beginning on a date unknown to the grand jury, but at least as early as December 2019, and continuing up to on or about October 15, 2020, within the Southern District of California, defendants LONG NGOC TRAN, aka "Long Tu", THANH LAN THI NGUYEN, aka "Lan", and others known and unknown to the grand jury knowingly opened, leased, rented, used and maintained any place, permanently and temporarily, namely: 4776 El Cajon Boulevard #102, San Diego, California;  for the purpose of manufacturing,

1  distributing, and using controlled substances; all in violation of
2  Title 21, United States Code, Section 856(a)(2) and Title 18, United
3  States Code, Section 2.

### Count 5

#### MAINTAINING A DRUG INVOLVED PREMISES

#### [21 U.S.C. § 856(a)(1)]

7      10.   The allegations set forth in paragraphs 2 and 3 are realleged
8  and incorporated by reference as if fully set forth herein.

9      11.   Beginning on a date unknown to the grand jury, but at least
10  as early as December 2019, and continuing up to on or about October 15,
11  2020, within the Southern District of California, defendants LONG NGOC
12  TRAN, aka "Long Tu", YVONNE MICHELLE AGUILAR, aka "Michelle", ROBERT
13  JAMES WRIGHT, SAENGAMPHAY M. PHOMMASANE, aka "Melinda", and others known
14  and unknown to the grand jury knowingly opened, leased, rented, used and
15  maintained any place, permanently and temporarily, namely: 3660 47th
16  Street, San Diego, California;  for the purpose of manufacturing,
17  distributing, and using controlled substances; all in violation of Title
18  21, United States Code, Section 856(a)(1) and Title 18, United States
19  Code, Section 2.

### Count 6

#### DISTRIBUTION OF METHAMPHETAMINE

#### [21 U.S.C. § 841(a)(1)]

23      12.   On or about January 7, 2020, within the Southern District of
24  California, defendant TAM ONH ONG, aka "Fireball", did knowingly and
25  intentionally distribute 50 grams and more, to wit:  approximately 50.8
26  grams of methamphetamine (actual), a Schedule II Controlled Substance;
27  in violation of Title 21, United States Code, Section 841(a)(1).
28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Count 7

DISTRIBUTION OF METHAMPHETAMINE

[21 U.S.C. § 841(a)(1)]

13.   On or about January 24, 2020, within the Southern District of California, defendants KAREN RENE ANN PRANGSAMPHAN-PORTER, aka "KK", and JESSICA CASTILLO, aka "Green Eyes", did knowingly and intentionally distribute 5 grams and more, to wit:   approximately 22.2  grams of methamphetamine (actual), a Schedule II Controlled Substance;  in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

Count 8

DISTRIBUTION OF METHAMPHETAMINE

[21 U.S.C. § 841(a)(1)]

14.   On or about May 7, 2020, within the Southern District of California, defendants TAM ONH ONG, aka "Fireball", and SAENGAMPHAY M. PHOMMASANE, aka "Melinda", did knowingly and intentionally distribute 5 grams and more, to wit:   approximately 44.7  grams of methamphetamine (actual), a Schedule II Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

FORFEITURE ALLEGATIONS

15.   The allegations contained in Counts 1 through 8 are realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to Title 18, United States Code, Sections 981(a)(1)(c) and 1955(d), Title 28, United States Code, Section 2461(c), and Title 21, United States Code Section 853.

//

14

//

### Forfeiture Allegation as to Count 1

16. Upon conviction of the offense alleged in Count 1 of this Indictment and pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955, and Title 28, United States Code, Section 2461(c) defendants LONG NGOC TRAN, aka "Long Tu", TUNG THANH NGUYEN, aka "Ang", THANH LAN NGUYEN, aka "Lan", DENNIS DIBLASI, aka "Drago", WAYNE CLAYTON, aka "G-Wayne", YVONNE AGUILAR, aka "Michelle", ROBERT WRIGHT, shall forfeit to the United States all their rights, title and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the offense, and any property, including, but not limited to, currency used in violation of the offense.

### Forfeiture Allegation as to Count 2

17. Upon conviction of the offense alleged in Count 2 of this Indictment and pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1955, and Title 28, United States Code, Section 2461(c) defendants LONG NGOC TRAN, aka "Long Tu", TUNG THANH NGUYEN, aka "Ang", THANH LAN NGUYEN, aka "Lan", DENNIS DIBLASI, aka "Drago", WAYNE CLAYTON, aka "G-Wayne", YVONNE AGUILAR, aka "Michelle", ROBERT WRIGHT, shall forfeit to the United States all their rights, title and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the offense, and any property, including, but not limited to, currency used in violation of the offense.

### Forfeiture Allegations as to Counts 3-8

18. Upon conviction of one or more of the felony offenses alleged in Counts 3 through 8 of this Indictment, said violations being

15

1  punishable by imprisonment for more than one year and pursuant to
2  Title 21, United States Code, Sections 853(a)(1) and 853(a)(2),
3  defendants LONG NGOC TRAN, aka "Long Tu", TUNG THANH NGUYEN, aka "Ang",
4  THANH LAN NGUYEN, aka "Lan", DENNIS DIBLASI, aka "Drago", WAYNE CLAYTON,
5  aka "G-Wayne", YVONNE AGUILAR, aka "Michelle", and ROBERT WRIGHT, shall
6  forfeit to the United States all rights, title and interest in any and
7  all property constituting, or derived from, any proceeds the defendants
8  obtained, directly or indirectly, as the result of the offenses, and any
9  and all property used or intended to be used in any manner or part to
10 commit and to facilitate the commission of the violations alleged in
11 Counts 3 through 8 of this Indictment.

12                          Specific Property

13       19. Based on the above forfeiture allegations for Counts 1
14 through 8, the property to be forfeited includes, but is not limited to:
15 six table top electronic gambling machines, nine full size electronic
16 gambling machines, and $1332 in US currency seized from 4079 Oakcrest
17 Drive, San Diego, CA; three table top electronic gambling machines, ten
18 full size electronic gambling machines, one 3/4 electronic gambling
19 machine, and $1547.00 in US currency seized from 3660 47th Street,
20 San Diego, CA; sixteen full size electronic gambling machines and $1982
21 in US currency seized from 4776 El Cajon Blvd #102, San Diego, CA;
22 twenty-one electronic gambling machines seized from 4834 University
23 Avenue, San Diego, CA; eighteen electronic gambling machines and $505.00
24 in US currency seized from 4834 University Avenue, San Diego, CA; $422.00
25 in US currency seized from 4166 48th Street, San Diego; and eight table
26 top electronic gambling machines, and $1199.00 in US currency seized
27 from 3817 El Cajon Boulevard, San Diego, CA.

28

1       20.   If  the  above-described  forfeitable  property,  as  a
2   result of any act or omission of the defendants:

3         a.    cannot be located upon the exercise of due diligence;
4         b.    has been transferred or sold to, or deposited with, a
5   third party;

6         c.    has been placed beyond the jurisdiction of the court;
7         d.    has been substantially diminished in value; or
8         e.    has been commingled with other property which cannot be
9   divided without difficulty;

10  it is the intent of the United States, pursuant to Title 21, United
11  States  Code,  Section  853(p)  and  Title  28,  United  States  Code.
12  Section 2461(c),  to  seek  forfeiture  of  any  other  property  of  the
13  defendants up to the value of the forfeitable property described above
14  as being subject to forfeiture.

15  All pursuant to Title 21, United States Code, Section 853, Title 18,
16  United States Code, Sections 981(a)(1)(C), and 1955(d), and Title 28,
17  United States Code, Section 2461(c).

18      DATED: April 9, 2021.

19

20

21

22

23  RANDY S. GROSSMAN
    Acting United States Attorney

24

25  By:
26  A. DALE BLANKENSHIP
    Assistant U.S. Attorney

27  By:
28  MATTHEW BREHM
    Assistant U.S. Attorney

17