```
 1                UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF CALIFORNIA
 3
 4 UNITED STATES OF AMERICA,   )  Case No. 21CR1109-H
                               )
 5          Plaintiff,         )  San Diego, California
                               )
 6 vs.                         )  Tuesday,
                               )  April 27, 2021
 7 LONG NGOC TRAN,             )  9:00 a.m.
                               )
 8          Defendant.         )
   _____)
 9
10           TRANSCRIPT OF DETENTION HEARING
        BEFORE THE HONORABLE ALLISON H. GODDARD
11           UNITED STATES MAGISTRATE JUDGE
12 APPEARANCES:
13 For the Plaintiff:      ARNOLD D. BLANKENSHIP, ESQ.
                           Assistant United States
14                           Attorney
                           880 Front Street
15                         San Diego, California 92101
                           (619) 546-6345
16
   For the Defendant:      JOSE G. BADILLO, ESQ.
17                         Law Office of Jose Badillo
                           427 E Street
18                         San Diego, California 92101
                           (619) 546-6705
19
   Transcript Ordered by:  JAN RONIS, ESQ.
20
   Transcriber:            Jordan Keilty
21                         Echo Reporting, Inc.
                           9711 Cactus Street, Suite B
22                         Lakeside, California 92040
                           (858) 453-7590
23
24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.
```

```
                                                                1
 1      SAN DIEGO, CALIFORNIA TUESDAY, APRIL 27, 2021 9:00 A.M.
 2                            --oOo--
 3           THE CLERK:  Calling matter 21CR1109, U.S.A. versus
 4  Long Tran.
 5           MR. BLANKENSHIP:  Dale Blankenship on behalf of the
 6  United States, your Honor.  Good morning.
 7           THE COURT:  Good morning.
 8           MR. BADILLO:  Good morning, your Honor.  Jose
 9  Badillo on behalf of Mr. Tran, who's appearing remotely.
10           THE COURT:  Good morning, Mr. Badillo, and good
11  morning to you, Mr. Tran.  I'm judge Goddard.
12           THE DEFENDANT:  Good morning.
13           THE COURT:  And you're appearing by video
14  conference right now.  Do you agree to give up your right to
15  appear in court in person for today and proceed instead by
16  video conference?
17           THE DEFENDANT:  Yes.
18           THE COURT:  Okay.  I think we need to turn up the
19  volume on them.  Thank you.  Oh, that's better.  Thank you.
20           All right.  Mr. Badillo, we're here today for a
21  detention hearing.  I have given you a tentative ruling.  How
22  do you want to proceed this morning?
23           MR. BADILLO:  I would like to go forward.
24           THE COURT:  Okay.  So since the tentative is
25  against you, I'm going to hear from you first, and I'll let
```

1 the Government respond.

2          MR. BADILLO:  No problem, your Honor.  I did
3 receive a copy of the Pretrial Service Report and looked at
4 it.  Obviously there are a lot of entries in regards to his
5 history, but it looks like he only has three actual
6 convictions.  I know that actually it was mentioned that case
7 was dismissed.  He had a case in 2008 -- or two cases in 2008
8 that were run concurrent, and his last case in 2015, which is
9 about six years ago.

10         In regard to the -- The Court's concern and the
11 Pretrial Services concerns, I was able to contact his family.
12 Actually, they reached out to me, and my investigator was a
13 able to speak several -- to several other members.  He does
14 have a place to live here in San Diego with his sister who's
15 currently attending college.  He has another brother that's
16 currently unemployed, but he does own a home.  He was
17 unemployed because of COVID but is looking to get back into
18 his job, and he does have some equity in his home.

19         He has a brother-in-law and sister that reside in
20 Texas.  They are home owners of two properties.  He's
21 currently retired or receives a pension of about $2900 a month
22 and also has rental income from the property that they own.
23 They're all willing to help Mr. Tran.  They're very
24 supportive.  They understand he's in a difficult situation,
25 but they're willing to be sureties for him and ensure that he

3

1 complies with any order of the Court.
2 In regards to obviously he was born in Vietnam, but
3 he grew up in San Diego. This is where he knows and where he
4 lives, and the majority of his family and friends are. He
5 does have family throughout in Vegas and in Texas, as I
6 indicated, but San Diego is his home. Obviously, there's
7 concerns about his record, but obviously the last time he got
8 in trouble was in 2006. He was employed as a janitor, but
9 because of COVID, he had been laid off, but he also has
10 friends that have a landscaping business, and it's my
11 understanding to the family that they're willing to employ him
12 and allow him to keep working.
13 So he does have resources out there for him, folks
14 that are willing to ensure that he complies with any order of
15 the Court, and obviously he has a place to live here in San
16 Diego, which -- obviously with a family member. So I think
17 there are conditions that can be set to appear that he, you
18 know, appears in court and that a bond can be granted.
19 THE COURT: Okay. Mr. Blankenship, I want to hear
20 from you, and I want you to address -- so, one of my concerns
21 is that his wife is in Vietnam, and I think he has a child
22 there too. So he has stronger ties other than just his
23 mother, and there could be a desire to just go back and get it
24 done there, you know, and finish life there. And so I'm
25 concerned about that. Would the location monitoring mitigate

4

that risk?  I want you to address that, Mr. Blankenship, and then you're welcome to argue counter to what Mr. Badillo said.

MR. BLANKENSHIP:  Yes, your Honor.  The United States does not believe that ankle monitoring will be sufficient in this case.  As the Court has highlighted, there are -- he is married.  His wife is in Vietnam.  He has a child in Vietnam, and I will also share with the Court that during the time of the interview with the Defendant's sister, Jenny told the agents that Mr. Tran actually intended to move to Vietnam soon.  So it's not that he was -- he may have long-term ties here, but his intention was to ultimately move to Vietnam.  There were several times during the investigation where we were trying to examine his travel records to find out if he was in the U.S. or Vietnam.  It is our understanding that he does travel to Vietnam.  He has traveled to Vietnam, and his intent was to move to Vietnam as told to us by his sister during that interview on April 14th by the case agent during the takedown.

So I think there are strong ties to Vietnam, and we -- the United States does have a form of diplomatic relationship with Vietnam, but I can tell you that the only -- the tension to Vietnam that I'm aware of in the past 15 years is -- is one where we actually deported somebody to Vietnam, and then we had some relations, but I don't think that we would be able to get him back in the event that he fled to

5

1 Vietnam.  I just don't think it's -- the status of our
2 relationship with Vietnam is sufficient to subordinate removal
3 or his extradition back to the United States.
4         With respect to the weight of the evidence and some
5 of the other factors that weigh in favor of detention in this
6 case, your Honor, this Defendant was the most prolific
7 gambling house operator that the agents were -- that the
8 investigators were aware of.  Not only those locations in the
9 indictment but other locations going back quite some -- some
10 years.  He has been identified in seven different locations
11 that closed and opened up repeatedly when raided by law
12 enforcement or -- as this Court is aware, the locations --
13 these gambling den locations attract a lot of crime.  One
14 particular location that was used by Mr. Tran was robbed
15 twice, and the -- the operator was assaulted and ended up in
16 the hospital.  I believe he died from one of those robberies.
17         Now, in addition to the criminal element that is
18 there just to rob the patrons, it also -- these locations also
19 attract a significant number of felons.  Methamphetamine is
20 distributed within these establishments.  As indicated in the
21 indictments, we've also charged him with three counts of
22 maintaining a drug involved premises because at each of these
23 locations, not only is methamphetamine use permitted, but it
24 is actively allowed and encouraged, and there's a couple of
25 reasons.

6

1        Use of methamphetamine attracts patrons away from
2 the local casinos so they then actually use meth while they're
3 gambling.  It keeps them at the machines longer because they
4 can stay awake longer, and that's not only just common sense,
5 but it was also stated by this Defendant to an undercover
6 individual or cooperating individual whom Mr. Tran was
7 attempting to recruit -- I'm sorry -- Mr. Tran was attempting
8 to recruit to open up more through gambling establishments and
9 was coaching him on how to operate those and coaching him on
10 the locations where best to open one and coaching him on how
11 many gang members he should -- he should invite to provide
12 protection and how to pay those gang members.
13        It was common knowledge to the investigators that
14 some of these locations were actually staffed by local gang
15 members.  If not, the local gang members were paid a portion
16 of the profits to operate in these -- in these locations.  Mr.
17 Tran actually told the undercover that he could negotiate with
18 one of the local gangs and actually pay them protection money
19 to make sure that they didn't get robbed.
20        Methamphetamine sales were -- were quite rampant
21 inside of these locations, and those were -- some of the
22 charges were included in this indictment, and some were
23 included as stand-alone indictments later.  We related those
24 cases, but there was just a significant amount of
25 methamphetamine sold and consumed in these locations, and they

were the subject of numerous crime stopper complaints.  The citizens complained to the police quite often just a significant number, and the police actually did a heat map during the course of the investigation to identify how many felonies -- felonies, property crime felonies, and the map depicted I believe in our search warrant like -- like 300 property crimes per location surrounding -- in an area surrounding these locations.  So it's just a significant draw to a crime in a neighborhood where people -- because they're not in a business -- some of them are in business, but some of them are in residential locations, residential neighborhoods.  So the locations were just a blite on the City Heights area.

With respect to his record, just looking back, he was arrested and convicted for conspiracy to -- for basically the same state offense, to keep a place where narcotic controlled substance distribution and conspiracy to commit a crime in 2015, and then he -- he's right back in business, which was not uncommon of these individuals' locations to be shut down.  They would be shut down.  The businesses were so lucrative.  Within days they would have all -- brought all the machines, put them in a new location, signed their lease, and got folks in there smuggling meth and gambling until all hours, like almost 24 hours a day.

For these reasons, given his ties to Vietnam, given his -- the weight of the evidence, although the least

8

1 important factor, we believe he is a flight risk.  We believe
2 his prior convictions and his ties to Vietnam will create a
3 significant incentive for him to flee and not stand trial for
4 these charges.
5             THE COURT:  Okay.
6             MR. BLANKENSHIP:  Unless you have any questions.
7             THE COURT:  Mr. Badillo, did you want to respond to
8 anything?
9             MR. BADILLO:  Just briefly, your Honor.  I would
10 also note that he has another child that does reside here in
11 the United States.  So he does have ties here, along with his
12 extended family.
13            Also, he -- during his interview with Pretrial
14 Services, he told him he has a passport inside his house.  So
15 he can surrender that to the Court or Pretrial Services to
16 ensure that he doesn't travel.  So there are also significant
17 ties here in the United States, and then there's things -- or
18 conditions that can be set to ensure that he does appear in
19 court.
20            THE COURT:  Okay.  So I will grant the Government's
21 motion.  I don't find that you've proved by clear and
22 convincing evidence that he's a danger to the community, but I
23 do find by a preponderance of the evidence that no condition
24 or combination of conditions of release will reasonably assure
25 Mr. Tran's appearance as required.

9

```
 1          The reason for detention include the nature and
 2 circumstances of the offense, his criminal history.  He has
 3 significant family or other ties outside the United States, a
 4 wife and child in Vietnam, and the weight of the evidence
 5 against him is strong, although that is the least important
 6 factor.
 7          So, I will order you detained, Mr. Tran.  That
 8 order will be without prejudice.  So you can talk to your
 9 lawyer about the potential of getting bail at a later date.
10 You're ordered to appear again for a motion hearing and trial
11 setting on May 10th at 10:00 a.m.
12          Is there anything else as to Mr. Tran?
13          MR. BLANKENSHIP:  No, your Honor.
14          MR. BADILLO:  No.  Thank you, your Honor.
15          THE COURT:  All right.  So that's it for you, Mr.
16 Tran.
17          Please let the officer know we're finished, and I
18 wish you good luck, sir.
19      (Proceedings concluded.)
20
21
22
23
24
25
```

*Echo Reporting, Inc.*

10

1     I certify that the foregoing is a correct
2 transcript from the electronic sound recording of the
3 proceedings in the above-entitled matter.
4
5 /s/Jordan Keilty                    10/15/2021
  Transcriber                         Date
6
  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7
8 /s/L.L. Francisco
  L.L. Francisco, President
9 Echo Reporting, Inc.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25